IFOPO SAIPISA on behalf of the
IFOPO FAMILY, Plaintiff

v.

SA SIATU`U, FIAAOGA SIATU`U, SAPINI SIATU`U,
and the Children of SIATU`U, Defendants

High Court of American Samoa
Land & Titles Division

LT No. 10-88

March 2, 1989

Before KRUSE, Chief Justice, LUALEMAGA, Associate Judge, and TUIAFONO, Associate Judge.

Counsel: For Plaintiff, Aviata Fa`alevao
For Defendants, Edwin Gurr

Plaintiff is the senior matai of the Ifopo family of the village of Fagatogo. Defendants are the children and heirs of the late Rev. Peleti Siatu`u who had settled in Fagatogo in the early 1930s. This dispute concerns a small piece of land, about 1/12th of an acre, located in the village of Fagatogo. Title to the land, with an accompanying survey, is registered in the Office of the Territorial Registrar as the individually owned land of Siatu`u, with the date of registration being February 5, 1945.

Plaintiff claims this land as part of the communal land of the Ifopo family known as "Paepaetele." As she understood Siatu`u's relationship to the land, he was merely occupying the plot in question at the sufferance of the Ifopo family. She only recently found out about the fact of registration after attempting to stop certain reconstruction work being done to Siatu`u's home located on the land. Plaintiff seeks annulment of

the registration; a declaration that the land is communal in nature and belongs to the Ifopo family; and possession of the land and the ejectment of Siatu`u's descendants.

Neither party disputes that Siatu`u came to live at Fagatogo through the assistance of plaintiff's father Nakiso, a former titleholder, and her brother, who at that time held the title Ifopo (apparently following the father's resignation in his favor --- fa`aui le ula). Ifopo and Nakiso pointed out a site for Siatu`u to occupy. However, the parties are at odds regarding the arrangement between their respective predecessors in interest. Plaintiff claims that Siatu`u was occupying Ifopo land at the sufferance of the Ifopo family. Defendants on the other hand claim that the land was sold to their father by Nakiso and his son Ifopo. In denying such a sale, plaintiff argues that there is no conveyance on record with the Territorial Registrar evidencing a proper alienation of communal land and that in any event such a sale between her predecessor and Siatu`u would be in violation of the laws against the alienation of communal land and thus void.

There was no meaningful testimony, however, explaining the background to the registration exercise. Plaintiff seemed to suggest that the registration was not above board, while defendant seemed to say that registration somehow consummated the sale.

Discussion

The immediate problem we encounter with this particular suit is that the Court is being asked to go behind the Registrar's records some 40 years after the fact and examine whether or not there was compliance with the registration enactments in force at the time. In similar circumstances the Court has held that, absent any evidence of fraud, the registration of title to land pursuant to the registration enactments (see A.S.C.A. §§ 37.0101 et seq.) cannot later be questioned. Molitui v. Pisa, 2 A.S.R. 268 (1947). These enactments require, inter alia, that an offer for title registration shall be posted publicly for a period of 60 days from the date of application and that any persons objecting to such offer shall file their objections within that period. A.S.C.A. §§ 37.0103 (a)-(b). If there are no objections filed within the 60 day

time frame, the Registrar shall, provided that all other statutory requirements have been met, register title to the applicant accordingly. A.S.C.A. § 37.0103 (c). Any objections filed outside that 60 day period will not be considered, Puluti v. Muliufi, 4 A.S.R. 672, 674 (1965), and the registration proceedings have in rem effect. Molitui v. Pisa, supra, at 270. The Court today is being asked to review compliance with these statutory requirements in 1945.

Even a casual glance at the enactments--- A.S.C.A. §§ 37.0101 et seq. --- would reveal the unmistakable legislative design to secure finality of the registration process. A review of that process some 40 years after the fact must surely be in derogation of that objective. If review could be readily available at any time whatsoever, then any public confidence in the recordation process will disappear and "[the] security of registered land titles would be seriously weakened to the detriment of the Samoan people." Molitui v. Pisa, supra, at 270. Indeed, some of the reasons behind these concerns for finality and integrity of the registration process become quite apparent when considering the evidence presented here.

In accepting Siatu`u's application to register the land, the Registrar recited as follows:

Notice having been posted for 60 days and there being no objection to the registration of the land PAIPAITELE [sic] in the name of Siatu`u, it is accordingly so registered as such.

On the other hand, plaintiff objects to the validity of such registration for a number of reasons. Firstly, plaintiff testified to the effect that neither she nor anyone else in the family was aware of the registration. She maintains that Siatu`u, who originally hailed from Manu`a, was merely permitted to live on the land by the matai, just as a number of other non-family members are found living on various other parts of "Paepaetele." Plaintiff notes that such a family of outsiders once attempted to register a part of

70

"Paepaetele" on their own accord and were ousted by her predecessor.[1]

Plaintiff further submitted a registered document, signed by Ifopo Fa`ateleupu and dated "January 20, 1966," which notifies the world that certain people, including Siatu`u, were occupying parts of Ifopo lands permissively. Such filings had the effect of arresting the running of the adverse possession statute, and plaintiff contends that that document by its very nature was therefore inconsistent with any acknowledgement of a sale.

As the testimony developed, however, it became quite apparent to the Court that plaintiff was in effect testifying negatively while drawing on recorded documentation to inferentially corroborate that negative. That is, plaintiff was not testifying from personal knowledge. She lacked knowledge as at all relevant times (when the principal method of inter-island communication would have been trading schooners) plaintiff primarily resided in a rural area of Upolu, Western Samoa, with her late husband. The notoriety then of such events occurring in Tutuila, as the surveying of land and the posting of notices dealing with lands, would of course have eluded plaintiff's attention. Plaintiff's lack of knowledge does not therefore mean that her predecessor in interest and adult family members occupying the family holdings at the time were not aware of registration events that occurred in 1945. In the light of plaintiff's extent, or lack, of knowledge, it would be exceedingly reckless speculation to question the above quoted recitals of fact made by the Registrar.

But plaintiff also directs our attention to the inconsistency between the registration papers and the document attempting to prevent adverse possession. The inconsistency is apparent, but that is about all we can say today about the documents since we can only but guess at the underlying considerations moving the generation responsible for the documents. The inconsistency in the nature of the documents does not necessarily mean that the Ifopo at the time could not have "acted" inconsistently --- presuming that we are

---

[1] The reference was to <u>Ifopo v. Vaiao</u>, 2 A.S.R. 472 (1949).

dealing with the same Ifopo. (According to plaintiff's testimony, her brother Ifopo Fa`amaile preceded her brother Ifopo Fa`ateleupu, who is the signatory of the 1966 document arresting the statute of limitations. However, her testimony about the date when the said Fa`amaile took the title was very vague.) The factual possibilities that thus confront us today are exactly the sort of reasons why the legislature early developed a method of registration which would ensure "finality" of land titles and thus eliminate any guesswork for future generations.

Plaintiff further submits that compliance with the registration enactments includes certification by the pulenu`u of the village that notice of the intended survey was given as the Act requires. Plaintiff maintains that the registration proceedings before us were defective in that there is no such certification on file with the Registrar's records.

Again, all that we can be sure of today is that the usual certificate of the pulenu`u one expects to be on file is not in fact on file. But that does not preclude the possibility that such certification was indeed made and placed on file at one time but has since gone missing. On different occasions before this Court, the present Registrar has acknowledged the fact that documents have been found to be missing from his files.[2] Again we find ourselves in the realm of speculation. The possibilities range from there was no certification undertaken by the pulenu`u to there was indeed a certification that has since been misplaced. The latter possibility may be more probable. We might assume that the Registrar, who was required to ensure total compliance with the enactments,[3] would

---

[2] Remedial action in the form of multiple reproduction of records will presumably eliminate any future problems with missing documentation.

[3] A.S.C.A. § 37.0103(c) reads: "If no notice of adverse claim is filed within the 60-day period, and all requirements of this chapter have been complied with, the territorial registrar shall register the title to such land in the name or names of the applicant or applicants." (Emphasis added.)

not have accepted the registration offer without the pulenu`u's certification.

The strongest ground advanced by plaintiff arises because it was apparent on the evidence that while the registration process occurred in 1945, the survey submitted for registration bears the earlier date 1933. Plaintiff assigns error to the registration proceedings in this regard, citing Muagututi`a v. Savea, 4 A.S.R. 483 (1964). This was a case where the Court denied registration to an applicant who had offered a survey made some 17 years earlier but accompanied by a current pulenu`u's certification of notice. The Court held that "the certificate filed d[id] not comply with the statute, the notice having been given almost 17 years after the survey was made." Id. at 484. This holding of the Court was a factual one whose facts are distinguishable from the facts of the matter at bar. The difference is the respective degree of proofs. In the Muagututi`a matter, the Court was concerned with a disputed registration proceeding. Obviously it was not satisfied on the evidence that the pulenu`u had complied with the statutorily required notice of the intended survey prior to the time of survey. Here, the plaintiff disputes a concluded registration proceeding to which attaches a presumption of conclusiveness. We are again essentially being asked to surmise from the difference in dates between registration on the one hand, and survey on the other, that the notice required by statute was therefore not given. The underlying consideration for such notice is contemporaneity with the fact of survey in order that all possible claimants may have the opportunity to object.[4] That a survey may have been originally commissioned in 1933 by Siatu`u does not necessarily preclude the possibility of a physical retrace of that survey having occurred in 1945, when the registration process was undertaken. Such a possibility would satisfy the statute as to notice. Lualemaga v. Asifoa, 9 A.S.R.2d 85 (1988).

---

[4] The pulenu'u is required among other things to give "public oral notice in the village at a meeting of the chiefs thereof of the time and place of the intended survey in order that other interested landowners might have an opportunity to be present thereat." A.S.C.A. § 37.0102 (c) (emphasis added).

As we alluded to above, fraud on the part of an applicant will vitiate the public policy concerns for finality and integrity of public recordings --- fraud invariably tolls limitations periods. A palpable fraud will invalidate a registration exercise. See also Faleafine v. Suapilimai, 7 A.S.R.2d 108 (1988). On the evidence presented us, we are unable to see anything that would sustain a conclusion of fraud in the proceedings of 1945.

'Finally, we consider plaintiff's contention that any sale of communal family lands by a former Ifopo to Siatu`u would be void for violating the statutes forbidding the alienation of communal land by a matai without the express permission of the Governor. See A.S.C.A. §§ 37.0201 et seq. This whole argument depends of the presupposition that the land in question is in fact the "communal" land of the Ifopo family. From an evidentiary point of view, the Court is confronted with the integrity of the Territorial Registrar's records, backed by the "finality" objectives of the registration enactments, evidencing title in this particular piece of realty as being in the individual ownership of Siatu`u. Against this is merely a claim of ownership by the present Ifopo backed by inference, or in the best light, circumstantial evidence to the following effect: if a prior Ifopo sold land, it necessarily follows that such land was communal in nature only; it is necessarily communal land because the 1/12 acre is surrounded by Ifopo people today; that such surrounding lands have been in part held by the Court to be Ifopo communal land, see Ifopo v. Vaiao, supra; therefore it necessarily follows that the 1/12 acre is Ifopo communal land. In these circumstances, the Court is hard pressed to undermine the integrity of the Registrar's records given the statutorily intended in rem effect of title duly determined pursuant to the registration enactments. The time for the Ifopo family to provide its extrinsic proofs of adverse title has long since lapsed. Indeed, they have waived their rights because of their apparent failure to object timely during the 1945 registration proceedings. Title, having been registered in the name of Siatu`u in apparent compliance with the registration enactments and without any evidence of palpable fraud, just cannot be disturbed today.

For the foregoing reasons, it is the Court's judgment that plaintiff has failed to sustain her burden of proof in questioning the integrity of the Registrar's records and his compliance with the registrations enactments in 1945. The complaint is therefore dismissed.